IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:18-CR-163-TAV-HBG |
| | ) | |
| DANIEL GARY DUGGAN, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This case came before the Court on February 8, 2019, for an evidentiary hearing on the Defendant's Motion to Suppress [Doc. 18]. Assistant United States Attorney Ray Barto Slabbekorn, Jr., appeared on behalf of the Government. Assistant Federal Defender Benjamin Sharp represented the Defendant, who was also present. At the conclusion of the testimony, the Court took the matter under advisement and allowed the parties the opportunity to file post-hearing briefs. After the Court granted the Defendant's unopposed motion for an extension of time, both the Government [Doc. 31] and the Defendant [Doc. 32] filed post-hearing briefs on March 20, 2019. Accordingly, after reviewing the parties' briefs and arguments, the evidence and exhibits presented at the hearing, and the relevant legal authorities, the Court recommends that the Defendant's motion to suppress be denied.

## I.    POSITIONS OF THE PARTIES

Defendant Duggan is charged [Doc. 3] with being a felon in possession of a firearm (Count One), being in receipt or possession of an unregistered firearm (Counts Two and Four), and being in receipt or possession of a firearm unidentified by serial number (Count Three).

Defendant seeks [Doc. 18] for the Court to suppress all evidence seized during two searches of a trailer located at 503 Waller Ferry Road, Lenoir City, Tennessee on July 30, 2018 and August 30, 2018, as well as all evidence seized during a search of his mother, Patricia Duggan's, home at 1640 Parkway Drive, Lenoir City, Tennessee on August 30, 2018.  The Defendant contends that these searches violated his Fourth Amendment rights, as he had a legitimate expectation of privacy in both the trailer and his mother's house.  First, Defendant challenges the searches of the property located at 503 Waller Ferry Road, claiming his mother could not lawfully consent to the search of the trailer.  Next, Defendant asserts that the affidavit in support of the search warrant for 1640 Parkway Drive on August 30, 2018 failed to establish probable cause, as the affidavit included information from two individuals who were in custody, contained no information about their reliability, and the underlying information was stale.  As a result of the alleged invalid consent and search warrant, Defendant maintains that all evidence seized from the searches on the two properties must be suppressed as fruit of the poisonous tree.

The Government responds [Doc. 19] that all searches at issue were valid and reasonable, as law enforcement properly obtained valid third-party consent twice to search the trailer located at 503 Waller Ferry Road, and that the affidavit for the search warrant established probable cause to search the residence at 1640 Parkway Drive.  The Government contends that law enforcement obtained valid consent from Patricia Duggan—the property owner—to search the entire property at 503 Waller Ferry Road, and that Patricia Duggan had actual and apparent authority to consent

2

to the search of her property. Additionally, the Government maintains that the search of the residence at 1640 Parkway Drive was lawful because it was based on a proper search warrant, and that the affidavit of Agent Makemson established probable cause. Finally, the Government maintains that even if a constitutional violation occurred in this case, the Court should not apply the exclusionary rule, because the officers acted reasonably and in good faith during both searches.

## II. SUMMARY OF TESTIMONY

At the February 8 hearing, the Government presented the testimony of Alcohol, Tobacco, and Firearms ("ATF") Special Agent James Makemson and Detective Marty Stanley from the Loudon County Sheriff's Office. The Government offered as exhibits the Search Warrant for 1640 Parkway Drive [Exh. 1]; a photograph of the map and property at 503 Waller Ferry Road [Exh. 2]; the Loudon County Sheriff's Department Consent to Search Form [Exh. 3]; collective photographs of the trailer located at 503 Waller Ferry Road [Exh. 5]; the ATF Consent to Forfeiture or Destruction of Property and Waiver of Notice [Exh. 6]; the Loudon County Codes Enforcement Letter to Gary Duggan [Exh. 7]; the ATF Consent to Search Forms [Exh. 8]; a map depicting the parcel and lots of Waller Ferry Road [Exh. 9]; and recordings of a jail call on November 7, 2018 [Exh. 14].

The Defendant presented the testimony of Patricia Duggan, as well as introduced as exhibits a photograph of the house and trailer at 503 Waller Ferry Road [Exh. 4]; a map of the Loudon County parcel and lots of Waller Ferry Road [Exh. 10]; a photograph of the trailer and barn [Exh. 11]; a photograph of the trailer [Exh. 12]; and recordings from conversation between Patricia Duggan and law enforcement on July 30, 2018 [Exh. 13].

The Court summarizes the witnesses' testimony and exhibits as follows:

3

Special Agent Makemson testified that he was informed by the Lenoir City Police Department in late June or early July 2018 that they had contacted an individual named Lorrie Lankford, who on two occasions, notified Lenoir City police officers that the Defendant was in the possession of firearms and ammunition, and had made threats toward law enforcement. [Tr. 32].[1] A review of the Defendant's criminal history revealed that the Defendant had three prior felony convictions. [Tr. 28, 32]. After Ms. Lankford was subsequently arrested, Special Agent Makemson and Detective Stanley conducted an interview on July 10, 2018. [Tr. 32]. During the interview, Ms. Lankford stated that she had witnessed the Defendant in the possession of numerous firearms "[o]n a few separate occasions" in a trailer off of White Wing Road. [Tr. 32–33].

Next, Special Agent Makemson testified that after the interview, he was notified by the Loudon County Sheriff's Office on July 30, 2018, that the Defendant had been arrested for domestic assault on July 28, 2018. [Tr. 36]. Lieutenant Shane Ezell, with the Loudon County Sheriff's Office, told Special Agent Makemson that he had received information that firearms could have been moved to the Defendant's cousin Patrick Duggan's house. [*Id.*]. At this time, Special Agent Makemson, together with Detective Stanley, interviewed Patrick Duggan. [*Id.*]. Patrick Duggan stated that he had no knowledge of any firearms on his property, and clarified that he owns 811 Waller Ferry Road, while Patricia Duggan owns the connecting property—503 Waller Ferry Road. [Tr. 37]. Patrick Duggan told law enforcement that Patricia Duggan uses the property at 503 Waller Ferry Road for storage. [*Id.*].

Special Agent Makemson then testified that he, along with Detective Stanley and Lieutenant Ezell, went to 503 Waller Ferry Road "to get a visual of the property." [Tr. 38]. They confirmed that it was Patricia Duggan's property by checking "with the property assessor's

---

[1] The Transcript [Doc. 25] of the February 8, 2019 evidentiary hearing was filed on February 22, 2019.

information on the website." [*Id.*]. Special Agent Makemson remained at the property, while Detective Stanley went to contact Patricia Duggan in person. [Tr. 39–40].

Detective Stanley testified that at this point, he met with Patricia Duggan at her other son Derrick Duggan's house. [Tr. 96]. Ms. Duggan stated that she owned the property at 503 Waller Ferry Road and that the property was used for storage. [Tr. 97]. Detective Stanley testified that Patricia Duggan then told him that the Defendant had moved the trailer onto her property at 503 Waller Ferry Road without her permission. [*Id.*]. Patricia Duggan acknowledged that the Defendant stayed at the property occasionally. [*Id.*]. Additionally, Detective Stanley testified that Ms. Duggan did not state that there was any part of the property that she did not have the authority to access, or that the Defendant had ever restricted her access. [Tr. 97–98].

An audio recording of a segment of Detective Stanley's conversation with Ms. Duggan was also played during the motion hearing. Detective Stanley stated that the audio recording was an accurate account of his conversation on July 30, 2018. [Tr. 104]. During the audio recording, submitted by the Defendant as Exhibit 13, Patricia Duggan states that the Defendant "more or less moved the trailer in on me, I didn't tell him to because he just does what he wants most of the time." [Exh. 13]. Patricia Duggan stated that the trailer did have power connected to it, but she wasn't sure if it had been cut off because "you know he's been staying down there in the bedroom." [*Id.*]. Ms. Duggan then claimed that the Defendant "had mostly been down there." [*Id.*]. Detective Stanley testified that his investigation revealed that the Defendant and his wife had resided at 1640 Parkway Drive. [Tr. 110–11]. Therefore, he interpreted Patricia Duggan to be claiming that the Defendant had been staying in the bedroom of her house, and that she had attempted to convince the Defendant to move into the trailer at 503 Waller Ferry Road, although he refused. [*Id.*]. Additionally, Ms. Duggan stated that she had not been to the house at 503 Waller Ferry Road in

years. [Tr. 105]. However, Detective Stanley testified that he did not question whether she had access to the trailer or ask any follow up questions regarding her use of the trailer. [Tr. 105–06].

Detective Stanley then reviewed the Consent to Search Form from the Loudon County Sheriff's Office [Exh. 3], and told Patricia Duggan that he wanted her permission to search the "house and white trailer next door." [Tr. 98]. However, Detective Stanley testified that he did not intend "next door" to refer to 811 Waller Ferry Road, and that he did not discuss the permission to search this property with Ms. Duggan. [Tr. 98–99]. Patricia Duggan then signed the Consent to Search Form. [Tr. 98].

After Detective Stanley returned to the property at 503 Waller Ferry Road, Special Agent Makemson and Detective Stanley, along with other members of law enforcement, then began to search the property at 503 Waller Ferry Road. [*Id.*]. Special Agent Makemson described the area around the trailer, stating that the "grass was very tall, [it] looked like it had not been mowed in quite some time," there were several miscellaneous items in the yard, and that "the steps that were built up to it looked like they were just kind of thrown together to be able to access the front door of the trailer." [Tr. 42]. During the hearing, after reviewing photographs taken by Detective Stanley [Exh. 5], Special Agent Makemson stated that the windows of the trailer were taped up and covered completely, which in his experience was not normal for a residence. [Tr. 43].

Detective Stanley testified that he and Special Agent Makemson first searched the house on the property before beginning to search the trailer. [*Id.*]. Detective Stanley testified that the trailer was not locked, that there was no one in the trailer, and that it "didn't look livable." [Tr. 101]. Detective Stanley described the area around the trailer as "very overgrown," with "[m]ost of the grass [being] over knee high on [him]," and that "[t]here were things strewn about in the yard, just in all sorts of disarray." [Tr. 101]. There were not any padlocks or safes in the trailer,

and Detective Stanley stated that while searching the trailer, he did not believe that it was someone's home. [Tr. 102].

Special Agent Makemson testified that as he entered the trailer, he did not find any evidence of utilities being serviced to the trailer, and that the inside of the trailer "was in a great state of disarray." [Tr. 44]. Special Agent Makemson further described the inside of the trailer, stating that there were items all over the floor, including hardwood flooring which was laid throughout the floor but not installed, a compressor to an air unit, several tools, and "so much material in the middle of the floor." [Tr. 44–45]. Special Agent Makemson stated that he found several different calibers of ammunition on the floor of the trailer. [Tr. 45].

Special Agent Makemson also found a homemade silencer in the middle of the floor of the trailer, which was later identified by ATF firearms experts to meet the definition of a silencer. [Tr. 47]. Next, Special Agent Makemson and the law enforcement officers conducting the search found a .22 caliber starter pistol in a backpack, a holster for a 1911-style pistol, a burnt and disassembled large-capacity magazine for an AR-15 rifle, and a lower receiver for an AR-style rifle. [Tr. 47–48]. During the hearing, Special Agent Makemson testified that this corroborated information received from Lorrie Lankford about the Defendant having AR-style rifles and potentially ordering parts of firearms over the Internet to attempt to build a rifle. [Tr. 48]. A Glenfield Model 25 .22 caliber rifle was also found underneath a mattress in the back room of the trailer, as well as .22 caliber ammunition. [Tr. 50–51].

During the search of the trailer, Special Agent Makemson and law enforcement officials found a prescription bottle with the Defendant's name on it, as well as several pieces of mail addressed to the Defendant with the address listed as 1640 Parkway Drive. [Tr. 49]. After finishing the search of the property, Special Agent Makemson and law enforcement officers

7

accumulated all of the items seized, at which time, Patricia Duggan denied possession of any of these items and signed the Consent to Forfeiture form. [Tr. 52]. Special Agent Makemson testified that he believed that Patricia Duggan had the authority to give consent to search her property, and she did not say anything to change this belief while signing the forfeiture form. [Tr. 52–53]. During the hearing, audio was also played of Detective Stanley's conversation with Patricia Duggan after the search where she signed the forfeiture form. [Tr. 107].

At this point, Special Agent Makemson testified that he remained in contact with Detective Stanley until they discussed recorded jail phone calls by the Defendant on August 7 and 8, 2018, which Special Agent Makemson interpreted the Defendant to be referring to firearms. [Tr. 54–55]. Defendant was making a phone call from the Loudon County Jail, where he was in custody for the state charge of domestic assault. [Tr. 55].

Then, on August 8, 2018, Special Agent Makemson and Detective Stanley interviewed the Defendant's brother, Joseph Duggan, at the Blount County Justice Center, where Joseph Duggan was incarcerated. [Tr. 56]. However, Joseph Duggan was not incarcerated from March 2018 until July 2018. [*Id.*]. Special Agent Makemson testified that Joseph Duggan stated that he "knew that ammunition was more or less at the 1640 Parkway house," and that he had seen the Defendant at the "Waller Ferry property with firearms on at least four to five separate occasions." [*Id.*]. Additionally, Joseph Duggan stated that he received a late notice on a credit card which was opened in his name, that described ammunition delivered to the address on Parkway Drive. [Tr. 56–57]. Special Agent Makemson testified that nothing that Joseph Dugan said caused him to believe that Patricia Duggan would not have the authority to consent to the search of the Waller Ferry property. [Tr. 57].

8

Special Agent Makemson also contacted the Loudon County Codes Enforcement to determine the status of the property at 503 Waller Ferry Road, and found that they had previously notified the Defendant that permits were needed in order for the trailer to become a dwelling. [Tr. 57–58]. The Government introduced as Exhibit 7 a letter from the Loudon County Codes Enforcement to Gary Duggan, the Defendant's deceased father, on February 26, 2018, advising the property owner that a permit was necessary to have a trailer on the property. [Exh. 7]. Additionally, Special Agent Makemson contacted the Lenoir City Utilities Board and found that there had been no active utilities at the property since 2014. [Tr. 58].

Special Agent Makemson then described the application for a search warrant on August 28, 2018, and its execution on August 30, 2018, for the residence at 1640 Parkway Drive. [Tr. 60]. His affidavit in support of the search warrant [Exh. 1] included information from the interviews with Lorrie Lankford and Patrick Duggan, as well as from speaking to Patricia Duggan, research into the Waller Ferry Road property, the search of 503 Waller Ferry Road, and his interpretation of the Defendant's jail calls on August 7 and 8, 2018. [Tr. 61]. After the magistrate judge signed the warrant, Special Agent Makemson and members of law enforcement went to the residence and advised Patricia Duggan that they had a warrant to search the property. [Tr. 63]. The inventory of the search warrant noted that nine items of evidence were seized, including several rounds of ammunition, and a Glock selector switch. [Tr. 64]. Special Agent Makemson testified that the Glock selector switch is used to turn a semiautomatic Glock pistol into a fully automatic pistol, and it meets the definition of an automatic weapon under the National Firearms Act. [*Id.*].

After executing the search warrant at 1640 Parkway Drive, Patricia Duggan again signed a written consent form allowing a search of her property at 503 Waller Ferry Road. [Exh. 8].

9

Patricia Duggan consented to a search of the "small white house, single[-]wide trailer, out building, [and] surrounding curtilage." [*Id.*]. After the second search of the property at 503 Waller Ferry Road, Special Agent Makemson stated that they found approximately 17 rounds of additional ammunition inside the trailer. [Tr. 65].

On cross-examination, Special Agent Makemson clarified that Ms. Lankford had been arrested for the possession of narcotics [*Id.*], and that she provided information about several individuals during the interview [Tr. 68]. However, Special Agent Makemson was not aware of any investigations that occurred into the other names provided in the interview. [*Id.*]. Further, Special Agent Makemson stated that he interviewed Ms. Lankford on July 10, 2018 and did not go to Patrick Duggan's residence until July 30, 2018. [*Id.*]. Special Agent Makemson testified that he then went to talk Patrick Duggan because Lieutenant Shane Ezell told him that during the arrest of the Defendant on July 28, 2018, the Loudon County Sheriff's Office received information that some firearms could have been moved to Patrick Duggan's property. [Tr. 69].

When discussing the trailer at 503 Waller Ferry Road, Special Agent Makemson stated that a search warrant or valid consent is needed to search a storage unit. [Tr. 70]. Next, Special Agent Makemson testified that when interviewing Joseph Duggan on August 8, 2018, Joseph Duggan stated that the Defendant stayed in the trailer "a couple nights," as he was trying to fix it up. [Tr. 74]. During the interview, Joseph Duggan also stated that he saw his brother, the Defendant, four or five times with a firearm. [Tr. 75]. Special Agent Makemson testified that he did not recall Joseph Duggan saying anything about having a firearm himself, although he is also a convicted felon, or if Lorrie Lankford stated that both the Defendant and Joseph Duggan were shooting firearms. [*Id.*].

On cross-examination, Special Agent Makemson stated that there was a "No Trespass" sign posted next to the front door of the trailer. [Tr. 78]. He did not recall the door being locked during the search of the trailer, but that the door did have a doorknob and was closed. [Tr. 78–79]. Additionally, Special Agent Makemson testified that there was a bed in the back room of the trailer, as well as tools which could be used to fix the trailer up. [Tr. 82]. Although he testified that the inside of the trailer did not look habitable, Special Agent Makemson stated that the trailer was secured with windows and doors, as well as a mattress. [*Id.*].

On redirect, Special Agent Makemson testified that before beginning his search of the Waller Ferry Road property on July 30, 2018, based upon his conversations with Detective Stanley, he believed that Patricia Duggan had the authority to consent to search of the property, including the trailer. [Tr. 83–84]. Further, when discussing the Defendant's jail calls on August 7 and 8, 2018, Special Agent Makemson drew the inference that the calls related to firearms through the use of the term the "tin man." [Tr. 84]. He stated that information he received from Lorrie Lankford and Joseph Duggan led him to believe that the Defendant may have left firearms in a position to be rusted. [Tr. 84–85]. Special Agent Makemson testified that during the interview, Joseph Duggan said that the Defendant's wife would help the Defendant and either hold the firearms that he had or hide and sell them. [Tr. 85]. Additionally, Special Agent Makemson interpreted the first jail phone call, which included a reference to the "tin man," to be discussing firearms, while he believed that in the second jail phone call, the Defendant was asking his wife about the sale of firearms that he had hid. [Tr. 86].

Detective Stanley testified that he had previously interacted with the Defendant, as well as Joseph Duggan, in a law enforcement capacity prior to the present investigation. [Tr. 91–92]. With respect to Lorrie Lankford, Detective Stanley testified that they had previously arrested Ms.

11

Lankford on narcotics violations, and that he interviewed her on July 10, 2018. [Tr. 93]. According to Detective Stanley, Ms. Lankford stated that she was scared of the Defendant, that he had firearms, and that he had made statements against law enforcement. [*Id.*].

Detective Stanley testified that Ms. Lankford described the location of the trailer where she had seen the Defendant possess guns, referencing that the trailer was off of White Wing Road. [Tr. 93–94]. After Detective Stanley described the proximity of White Wing Road and Waller Ferry Road, Ms. Lankford then confirmed that Waller Ferry Road was the location which she was describing. [Tr. 94]. Referring to a map of the parcels and lots on Waller Ferry Road [Exh. 10], Detective Stanley stated that he was not aware of any evidence that anyone other than Patricia Duggan owns the piece of property on which the trailer was located. [Tr. 95].

On cross-examination, Detective Stanley testified that he did not recall Lorrie Lankford stating that both the Defendant and Joseph Duggan were shooting firearms. [Tr. 102]. Additionally, he testified that he did not speak to Patrick Duggan on July 30, 2018, and that his partner, Investigator Jamie Ketner, recorded when he obtained consent from Patricia Duggan on the same day. [Tr. 103–04]. Detective Stanley testified that the audio recording was only a portion of the conversation in which Ms. Duggan gave her consent to search the property, and that he had previously discussed the property with her. [Tr. 109–10].

Patricia Duggan testified that she owned both properties—503 Waller Ferry Road and 1640 Parkway Drive. [Tr. 7]. She stated that she and her now-deceased husband owned the property at 503 Waller Ferry Road, and that her family originally lived at 503 Waller Ferry Road, but that no one presently lived at the property. [*Id.*]. Ms. Duggan also said that her son, the Defendant, "moved a trailer . . . on that piece of property without my permission." [Tr. 8]. When law enforcement officials met with her at her other son, Derrick Duggan's house, she testified that

12

"[t]hey wanted to know if they could go down there and take a look, see if they could find anything [and] I didn't have a problem with it." [*Id.*]. She stated that she did not pay for the trailer in any way, hook utilities up to the trailer, or have any of her property in the trailer. [Tr. 9]. Further, she testified that the Defendant "lived in [the trailer] on and off" while he was "fixing it up," and that he and his wife had power hooked up to the trailer. [*Id.*].

When discussing the trailer, Patricia Duggan stated that she did not go to the property at 503 Waller Ferry Road often, that she had only been in the trailer "three or four times," and that she did not have any ownership interest in the trailer. [Tr. 10]. Further, she stated that she "probably" told law enforcement officers that it was the Defendant's trailer, and that "they knew he had been living down there." [*Id.*].

On cross-examination, Patricia Duggan testified that she had been in the trailer before and that the Defendant never restricted her access to the trailer. [Tr. 11]. She stated that her son had been trying to fix up the trailer, "but it was mostly just a lot of junk down there." [Tr. 12]. Although the Defendant had planned to live in the trailer, Patricia Duggan said that the Defendant lived in the extra bedroom at her house at 1640 Parkway Drive "for the last three months before he got arrested." [*Id.*]. During this period, Patricia Duggan stated that her son "wasn't even down there [at 503 Waller Ferry Road] hardly any." [*Id.*]. When reviewing a picture of the property at 503 Waller Ferry Road [Exh. 2], Patricia Duggan stated that law enforcement requested to search the property, which she referred to as "my property, and, you know, that's all mine, so I figured the whole thing." [Tr. 14.].

Patricia Duggan testified that her son moved the trailer onto her property without her permission, but that the space where the trailer was placed was on her property. [Tr. 17]. Ms. Duggan stated that she was contacted by Mr. Jenkins, with the Loudon County Codes

Enforcement, who said that he had previously spoke with the Defendant about the need for a permit for the trailer, if it was to be used as a residence. [Tr. 18–19].

Patricia Duggan acknowledged that the lot that the trailer was on could potentially be a separate address, but that she pays taxes on the property. [Tr. 20]. Ms. Duggan stated that she did not store any of her belongings at the trailer, spend the night there, have a key, or spend more than just a couple of minutes at the trailer. [Tr. 22–23]. She did not contribute anything financially towards the purchase of the trailer. [Tr. 23]. Additionally, Patricia Duggan testified that electricity may have been accessed from Patrick Duggan's property, and that the Defendant and his wife "paid the back where they owed LSCUB . . . and they got it turned on." [Tr. 23–24].

Lastly, during the evidentiary hearing, the Government played a portion of the Defendant's jail call to his mother on November 7, 2018 discussing the usage of the trailer. [Tr. 113]; *see* [Exh. 14]. In this recording, the Defendant asks Patricia Duggan about her consent to the police to search "his place," as well as requests for her to "check" on several of his personal items at 503 Waller Ferry Road. [Exh. 14]. Further, the Defendant and Patricia Duggan discussed the need for a permit for the trailer, and the Defendant stated that a permit was not needed if the trailer was used as storage. [*Id.*].

## III. FACTUAL FINDINGS

The Court makes the following factual findings:

Patricia Duggan is the owner of both properties at issue in this case—503 Waller Ferry Road and 1640 Parkway Drive in Lenoir City, Tennessee. The Defendant was arrested by the Loudon County Sheriff's Office on July 28, 2018, for domestic assault.

Patricia Duggan signed a Consent to Search Form on July 30, 2018, at 8:25 p.m., authorizing law enforcement to conduct a complete search of the premises and property, including

14

all buildings and vehicles, located at "503 Waller Ferry [Road], Lenoir City, TN, House and White Trailer Next Door." [Exh. 3]. Law enforcement officers, including Special Agent Makemson and Detective Stanley, subsequently conducted a search of the property at 503 Waller Ferry Road, including the house and trailer. After the search on July 30, 2018, Patricia Duggan signed a consent to the forfeiture of several items seized from the trailer at 503 Waller Ferry Road, including: 1) a black homemade silencer with no serial number; 2) approximately 42 rounds of miscellaneous ammunition; 3) a Glenfield Model 25 .22 caliber rifle; 4) approximately 277 rounds of miscellaneous ammunition; 5) approximately 89 rounds of miscellaneous ammunition; 6) a Model 1900 .22 caliber Brevettata starter pistol; 7) one loaded magazine from Room A; and 8) six loaded magazines from Room B. [Exh. 6].

On August 28, 2018, Special Agent Makemson filed an application for a search warrant to search the residence located at 1640 Parkway Drive, Lenoir City, Tennessee, 37771. [Exh. 1]. In support of this application, Special Agent Makemson filed a supporting affidavit as well as pictures of the property. Magistrate Judge Debra C. Poplin signed the search warrant on August 28, 2018, finding that probable cause existed to search the property at 1640 Parkway Drive. [*Id.*].

Law enforcement officers then searched the property at 1640 Parkway Drive on August 30, 2018. Several items were seized following the search, including: 1) one round of .22 caliber ammunition; 2) one round of .25 caliber/loaded Ruger magazine with six "rounds .380/1 round .22 blank;" 3) 38 rounds of assorted .22 caliber ammunition; 4) 26 rounds of .223 caliber ammunition; 5) five rounds of .45 caliber ammunition; 6) one round of 12 gauge ammunition; 7) one round of .357 caliber ammunition; 8) 215 rounds of assorted caliber ammunition; and 9) a suspected machine gun- Glock selector switch. [Exh. 1].

On August 30, 2018, after the execution of the search warrant and while the Defendant was still in jail, Special Agent Makemson and law enforcement officers then obtained Ms. Duggan's consent to search the property on 503 Waller Ferry Road for a second time. [Exh. 8]. Following this search, approximately seventeen rounds of additional ammunition were found.

## IV. ANALYSIS

The Defendant challenges the warrantless searches of his trailer located at 503 Waller Ferry Road, as well as the search of his mother's home at 1640 Parkway Drive. The Defendant asserts that he had a legitimate expectation of privacy in both properties. Therefore, the Defendant claims that Patricia Duggan did not possess the actual or apparent authority to consent to a search of the trailer, as well as that the search warrant failed to establish probable cause for the search of 1640 Parkway Drive. The Court examines each of these arguments, along with the Government's contention that the exclusionary rule does not apply in this case.

### A. Searches of 503 Waller Ferry Road

The Defendant argues that the warrantless searches of the trailer located at 503 Waller Ferry Road on July 30, 2018 and August 30, 2018, violated his rights under the Fourth Amendment. First, he contends that his mother, Patricia Duggan, could not lawfully consent to the searches of his trailer, as she did not have common authority over the trailer. Second, he asserts that evidence presented at the suppression hearing established that law enforcement was aware that his mother did not have the authority to consent to a search of the trailer.

However, the Government contends that the searches of the trailer located at 503 Waller Ferry Road were valid under the third-party consent given by Patricia Duggan. The Government asserts that Detective Stanley received both verbal and written consent from Ms. Duggan, the property owner, providing actual authority to conduct the search. In support of its argument, the

16

Government claims that Ms. Duggan had full access to and control over the trailer. Additionally, the Government alleges that the Defendant's placement of the trailer on the property without his mother's permission establishes that the Defendant did not have an exclusive expectation of privacy. Moreover, the Government maintains that the information available to law enforcement at the time of the search indicated that Ms. Duggan had full authority to consent to a search of a trailer, and thus it was reasonable for law enforcement to rely on her authority to consent to a search.

The Fourth Amendment protects citizens against unreasonable searches or seizures. U.S. Const. amend IV. "The Fourth Amendment permits a search without a warrant if valid consent to search is given." *United States v. Lucas*, 640 F.3d 168, 174 (6th Cir. 2011). "It is the Government's burden by a preponderance of the evidence, to show through clear and positive testimony that valid consent was obtained." *United States v. Hinojosa,* 606 F.3d 875, 881 (6th Cir. 2010) (internal quotation marks omitted).

A warrantless search does not violate the Fourth Amendment when a person who possesses common authority over the premises consents to the search. *United States v. Matlock,* 415 U.S. 164, 170–71 (2007). "Common authority" derives from the "mutual use of the property by persons generally having joint access or control for most purposes." *Id.* at 171 n.7. Additionally, the consent of a party possessing apparent authority is valid "if the facts available to the officer at the moment . . . warrant a man of reasonable caution in the belief that the consenting party had authority over the premises." *United States v. Turner*, 287 F. App'x 426, 430 n.3 (6th Cir. 2008) (quoting *Illinois v. Rodriguez,* 497 U.S. 177, 188 (1990)) (internal quotation marks omitted).

As an initial matter, the Court notes that the Defendant has not asserted that Patricia Duggan's consent was not given voluntarily. The Government has the burden of proving, by a

17

preponderance of the evidence, that "the consent was voluntary, unequivocal, specific, intelligently given, and uncontaminated by duress or coercion." *United States v. Lucas,* 640 F.3d 168, 174 (6th Cir. 2011) (quotation omitted). Although her original consent was given at 8:25 p.m., and multiple members of law enforcement were present, there was nothing coercive about the procedures used to gain consent. Ms. Duggan stated that she did not have a problem with law enforcement searching her property [Tr. 8], and the Court has reviewed the submitted recording of a portion of her conversation with Detective Stanley in which she gave consent to search the property [Exh. 13]. Therefore, the Court concludes that Patricia Duggan was not coerced into giving consent to search the property or the trailer at 503 Waller Ferry Road

The Court will next examine whether Patricia Duggan had the actual and/or apparent authority to consent to a search of the trailer at 503 Waller Ferry Road.

### 1.    Actual Authority

The Defendant contends that Patricia Duggan did not have the actual authority to consent to a search of the trailer because she had no financial or personal interest in the trailer, and that she did not use or access the trailer.

However, the Government asserts that Patricia Duggan had the actual authority to consent to a search of the trailer, as she was the property owner and because the Defendant moved the trailer onto her property despite her opposition. Therefore, the Government claims that the Defendant did not have an exclusive expectation of privacy in the trailer. Moreover, the Government maintains that as the property owner, Ms. Duggan retained the authority to access and control over the trailer.

A third party with a "sufficient relationship to the premises" may consent in the absence of the occupant in question. *Matlock*, 415 U.S. at 171. "[W]hen the government seeks to justify a

warrantless search by proof of voluntary consent, in the absence of proof that consent was given by the defendant, it 'may show that permission to search was obtained from a third party who possessed common authority or other sufficient relationship to the premises or effects sought to be inspected.'" *United States v. Waller*, 426 F.3d 838, 845 (6th Cir. 2005) (quoting *Matlock*, 415 U.S. at 171–72). "[C]ommon authority rests 'on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.'" *Id.* (quoting *Matlock*, 415 U.S. at 171, n.7).

An individual seeking Fourth Amendment protection must "demonstrate that he had a legitimate expectation of privacy" in the premises searched. *United States v. Hunyady*, 409 F.3d 297, 300 (6th Cir. 2005). The "factors to be considered in determining whether there was a legitimate expectation of privacy include ownership, lawful possession, or lawful control of the property." *Id.* (citing *United States v. McRae*, 156 F.3d 70, 711 (6th Cir. 1998)). "A [party] must satisfy a two-pronged test to show a legitimate expectation of privacy: 1) he must manifest an actual, subjective expectation of privacy; and 2) that expectation is one that society is prepared to recognize as legitimate." *Id.* at 301 (quoting *United States v. Pollard*, 215 F.3d 643, 647 (6th Cir. 2000)).

While the Government claims the Defendant did not have an expectation of privacy in the trailer, the Defendant owned the trailer, and his mother had no financial interest or property stored in the trailer. While Patricia Duggan owned the property, and testified that the Defendant moved the trailer onto her property without permission, she failed to take further action despite visiting the trailer "three or four times." [Tr. 10]. The Defendant was attempting to renovate the trailer,

and had stayed there on several occasions. The door to the trailer was shut, and the Defendant had posted a no trespassing sign. Therefore, the Court finds that the Defendant had an expectation of privacy in the trailer.

However, whether Patricia Duggan had the actual authority to consent to a search of the trailer located on her property is an extremely close question before the Court. "When evaluating whether a third party has actual authority to consent, . . . courts routinely consider evidence that the officers were not aware of at the time they conducted the search." *United States v. Wilburn*, No. 6:11-CR-15-GFVT-2, 2012 WL 1658697, at *5 (E.D. Ky. Mar. 5, 2012) (collecting cases), *report and recommendation adopted by*, 2012 WL 1658678 (E.D. Ky. May 11, 2012).

Patricia Duggan owned the property at 503 Waller Ferry Road, and also used the property for storage. In *United States v. Hall*, the Sixth Circuit "upheld the validity of consent to search a room given by the owner, where the owner simply allowed the defendant to live there, the room was never locked, and the owner never entered the room after the defendant began living there." *See United States v. Austin*, 81 F.3d 161 (Table), 1996 WL 109500, at *3 (6th Cir. 1996) (citing *United States v. Hall*, 979 F.2d 77 (6th Cir. 1992)). Similarly, Patricia Duggan arguably "allowed" the Defendant to place his trailer on her property. *Id.* Moreover, the trailer was not a residence at the time of the searches, as the Defendant and his wife had been living at 1640 Parkway Drive. Patricia Duggan had previously been to the trailer, the trailer was not locked, and she had not been denied permission to access the trailer. Additionally, Loudon County Codes Enforcement sent the notice about the need for a permit on the property to the property owner, Patricia Duggan's husband. Therefore, the Defendant potentially "assumed the risk" that his mother would consent to a search of the trailer, as he moved the trailer onto her property without her permission. *United States v. Matlock*, 415 U.S. 164, 171 n.7 (1974).

20

Nevertheless, while Patricia Duggan was the property owner, it is undisputed that the Defendant owned the trailer and was attempting to renovate it to be used as a residence. Further, Patricia Duggan did not have any of her personal property inside of the trailer. While she originally did not give the Defendant her permission to move the trailer onto her property, Patricia Duggan subsequently failed to act despite her knowledge that the Defendant had stayed in the trailer several times. Additionally, the Defendant had been in contact with the Loudon County Codes Enforcement about obtaining permission for the trailer to serve as a residence. Although Patricia Duggan was the property owner of 503 Waller Ferry Road, the Defendant retained "exclusive control" over the trailer on the property. *See United States v. Purcell*, 526 F.3d 953, 963 (6th Cir. 2008) (assuming, without deciding, that the third-party did not have actual authority to consent to a search of the Defendant's duffel bag and backpack, and noting that the third party did not have personal effects in the Defendant's bags and the Defendant "exercised exclusive control over his bags" as "factors [which] would all tend to establish that [the third party] lacked actual authority").

Ultimately, the Defendant had a property interest in the trailer at issue, while his mother, Patricia Duggan, was the property owner of 503 Waller Ferry Road. Although the Defendant and Patricia Duggan each had a property interest, both failed to take steps to secure that interest. The Defendant did not lock the trailer, while Patricia Duggan did not force the Defendant to move the trailer off of her property. However, Patricia Duggan and the Defendant "held a mutual understanding" that the trailer contained the Defendant's personal property, and Patricia Duggan did not attempt to access or control the trailer. *See United States v. Waller*, 426 F.3d 838, 845–46 (6th Cir. 2005) (finding a resident of an apartment, who gave the defendant permission to store his suitcases in the apartment, did not have the common authority to grant consent for the police to search the closed suitcases).

Accordingly, although Patricia Duggan had a "mutual use" of the overall property, she did not access or have control over the trailer at issue. *Matlock*, 415 U.S. at 171 n.7. Therefore, the Court finds that Patricia Duggan did not possess the actual authority to consent to a search of the Defendant's trailer. However, the Court must also consider whether Patricia Duggan possessed the apparent authority to consent to a search of the trailer.

### 2. Apparent Authority

The Defendant claims that his mother also did not have the apparent authority to consent to a search of the trailer, as he asserts that law enforcement should have further inquired as to whether Patricia Duggan had the authority to consent to a search. In support, the Defendant contends that law enforcement knew that he owned the trailer, that he was trying to repair the trailer, and that he occasionally stayed there; and in light of these facts, Detective Stanley and law enforcement failed to inquire into Patricia Duggan's use and ownership of the trailer.

However, the Government argues that Patricia Duggan had the apparent authority to consent to a search of the trailer, as Detective Stanley received both verbal and written consent to search the property from the property owner. Additionally, the Government submits that Patricia Duggan had full access to and control over the trailer, and that law enforcement had not received any indication that the trailer was the Defendant's home.

Law enforcement can justify a warrantless search based on the consent of a third party under apparent authority, "if 'the facts available to the officer[s] at the moment [would] warrant a man of reasonable caution in the belief that [there was] consent [from a] party [that] had authority over the premises.'" *United States v. Kimber*, 395 F. App'x 237, 243–44 (6th Cir. 2010) (alteration in original) (quoting *Illinois v. Rodriguez*, 497 U.S. 177, 188 (1990)); *see also United States v. Gillis*, 358 F.3d 386, 390–91 (6th Cir. 2004) ("Apparent authority is judged by an objective

standard. A search consented to by a third party without actual authority over the premises is nonetheless valid if the officers reasonably could conclude from the facts available that the third party had authority to consent to the search.") (citing *Rodriguez*, 497 U.S. at 188–89).

Here, the Court finds that Patricia Duggan possessed the apparent authority to consent to a search of the trailer located on her property at 503 Waller Ferry Road. Detective Stanley testified that after obtaining Patricia Duggan's consent to search the property, he did not have any reason to believe that she did not have the authority to consent to a search of the trailer [Tr. 100]. Special Agent Makemson testified that he believed that Patricia Duggan had the authority to consent to a search of her entire property [Tr. 79]. Patricia Duggan was the property owner of 503 Waller Ferry Road, which Detective Stanley and Special Agent Makemson confirmed by reviewing property records. [Tr. 38]. Additionally, Patricia Duggan told the law enforcement officers that her son, the Defendant, placed the trailer onto her property without permission, and that the entire property was used for storage. [Tr. 97].

Patricia Duggan gave both her verbal and written consent, and did not object or alert law enforcement when Detective Stanley specifically mentioned that her consent would cover the trailer located on her property. [Tr. 98]. The consent forms signed for both searches specifically stated that Ms. Duggan was consenting to a search of her property, including the white trailer. Moreover, Ms. Duggan signed her consent to forfeit the property seized from the trailer. Lastly, Patricia Duggan did not tell law enforcement that she did not have control over or had ever been denied access to the trailer. Patricia Duggan's relationship to the Defendant, both as his mother and as the property owner of 503 Waller Ferry Road, further establishes the reasonableness of Detective Stanley and Special Agent Makemson's belief that she had the authority to consent to a

search of the trailer. This belief is supported by Patricia Duggan's testimony, as she testified that she considered the trailer to be a part of her property. [Tr. 14].

A review of the testimony at the evidentiary hearing also supports Special Agent Makemson and Detective Stanley's belief that Patricia Duggan had the authority to consent on August 30, 2018 to the second search of the trailer. Patricia Duggan again gave her consent to search the property, including the trailer. Further investigation had revealed that the Defendant was living at 1640 Parkway Drive, and law enforcement obtained a search warrant to search his residence. Additionally, Special Agent Makemson testified that they discovered that the Loudon County Codes Enforcement had contacted the property owner, Patricia Duggan's deceased husband, regarding the need for a permit in order to have the trailer on the property. [Tr. 57–58]. Ultimately, law enforcement had obtained additional information at the time of the second search to support their belief that the Defendant did not reside at 503 Waller Ferry Road, and that Patricia Duggan, as the property owner, had the authority to consent to a search of the trailer.

Therefore, it was reasonable for Special Agent Makemson and Detective Stanley to believe that Patricia Duggan had "a sufficient relationship to the premises" to consent to a search of the trailer. *United States v. Matlock*, 415 U.S. 164, 171 (1974); *see, e.g.*, *United States v. Burcham*, No. 03-20041B, 2009 WL 425006, at *3 (W.D. Tenn. Feb. 19, 2009) ("Crediting the testimony of the officers, at the time of the consent, they knew Kinsella was Burcham's girlfriend, that she had been to the storage locker before and that she had the access code and key thereto. This was sufficient for the officers to establish her authority to consent to the search.").

The Defendant claims that Special Agent Makemson and Detective Stanley had a duty to further inquire into the ownership of the trailer, as well as Patricia Duggan's use of the trailer. When law enforcement is conducting a search pursuant to the consent of a third party and

24

"circumstances arise that create ambiguity as to whether the person who consented actually had the authority to consent to the search, the police have a duty to take affirmative steps to confirm that the person who consented actually had such authority." *United States v. Tatman*, 397 F. App'x 152, 167 (6th Cir. 2010) (citing *United States v. Waller*, 426 F.3d 838, 846–49 (6th Cir. 2005)). "[A]pparent authority cannot exist if there is ambiguity as to the asserted authority and the searching officers do not take steps to resolve the ambiguity." *United States v. Purcell*, 526 F.3d 953, 963 (6th Cir. 2008).

Although Patricia Duggan informed Detective Stanley that the Defendant had moved the trailer onto her property without her permission, Special Agent Makemson and Detective Stanley still proceeded under a reasonable belief that she possessed the authority to consent to a search. *See United States v. Gillis*, 358 F.3d 386, 390–91 (6th Cir. 2004). The Court notes that while giving her consent, Patricia Duggan stated that the power connected to the trailer may have been shut off because the Defendant had "been staying down there in the bedroom." [Exh. 13]. However, Detective Stanley testified that at this time law enforcement believed that the Defendant and his wife were living at 1640 Parkway Drive. [Tr. 110]. Further, Detective Stanley interpreted Patricia Duggan's statement to mean the Defendant had been staying in the bedroom at her house at 1640 Parkway Drive, and that he had refused her wishes for him to move into the trailer as a residence. [Tr. 110–11]. Additionally, in the audio recording of Detective Stanley obtaining Patricia Duggan's consent, Detective Stanley clarified twice that both the house and trailer are listed on the consent form, and Patricia Duggan did not provide any additional information. [Exh. 13]. Ultimately, Detective Stanley testified that at no time did he believe that Patricia Duggan did not possess the authority to consent to a search of the property [Tr. 100].

Additionally, the characteristics of the trailer did not alert law enforcement that Patricia Duggan did not possess valid consent to search the property. Both Special Agent Makemson and Detective Stanley testified that they did not believe that the trailer was a residence, and Detective Stanley stated that the trailer "didn't look livable" [Tr. 101]. Moreover, both members of law enforcement testified that the grass was extremely overgrown outside of the trailer, and that there were several miscellaneous items throughout the yard. Detective Stanley described the area outside of the trailer as in "all sorts of disarray." [*Id.*]. Although there was a no trespassing sign posted on front of the trailer, the trailer was not locked, the windows of the trailer were taped up and covered completely, and the trailer was not connected to utilities.

Further, upon entering the trailer, Special Agent Makemson and Detective Stanley discovered several additional items, including hardwood flooring panels and parts of an air compressor unit, scattered throughout the trailer. Special Agent Makemson described the inside of the trailer as being in a "great state of disarray." [Tr. 44]. Lastly, although there was a bed in the back room of the trailer, Special Agent Makemson and Detective Stanley found several rounds of ammunition on the floor directly upon entering the trailer. [Tr. 45].

Ultimately, law enforcement, including Special Agent Makemson and Detective Stanley, acted under a reasonable belief that Patricia Duggan, as the property owner, had the authority to consent to a search of her entire property—including the trailer at issue. First, Patricia Duggan's joint access to the property, coupled with her relationship to the Defendant, led law enforcement to believe that she had the authority to consent to a search of her entire property. Next, the characteristics of the property, including its overall use for storage, as well as the nature of the trailer, would not have alerted Special Agent Makemson or Detective Stanley that Ms. Duggan did not possess the authority to consent to a search of the trailer. Accordingly, it was "reasonable" for

Special Agent Makemson and Detective Stanley to believe that Patricia Duggan had "authority over the premises," and, as such, the apparent authority to consent to the search of the trailer. *Illinois v. Rodriguez,* 497 U.S. 177, 188 (1990).

### B. Search of 1640 Parkway Drive

The Defendant contends [Doc. 32] that the affidavit of Special Agent Makemson in support of the search warrant for the search of 1640 Parkway Drive failed to establish probable cause. Specifically, the Defendant alleges that the information contained in the affidavit was stale, was based off information provided from two individuals who were in custody, and did not include any information about their reliability or corroboration. However, the Government maintains [Doc. 31] that the affidavit established probable cause, as it included corroborated information from four witness interviews, the intercepted jail calls, and the search of 503 Waller Ferry Road.

Search warrants must be issued "only upon a finding of 'probable cause.'" *United States v. Beals*, 698 F.3d 248, 264 (6th Cir. 2012) (quoting U.S. Const. amend. IV). Probable cause requires that there be "a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Williams*, 544 F.3d 683, 686 (6th Cir. 2008) (quoting *United States v. Laughton*, 409 F.3d 744, 747 (6th Cir. 2005)). In making a probable cause determination, a magistrate judge makes a "practical, common-sense decision . . . given all the circumstances set forth in the affidavit." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

When a search warrant affidavit includes a tip from an informant, the Court "must consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances." *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003). There are two main ways to establish the reliability of an informant's tip: (1) through the informant's prior track record, *see United States v. Smith*, 182 F.3d 473, 483 (6th Cir. 1999) ("[I]f the prior track record

of an informant adequately substantiates his credibility, other indicia of reliability are not necessarily required."); or (2) through corroborating information, *see United States v. Tuttle*, 200 F.3d 892, 894 (6th Cir. 2000) ("[I]nformation received from an informant whose reliability is not established may be sufficient to create probable cause when there is some independent corroboration by the police of the informant's information.").

### 1. Staleness

First, the Defendant asserts that the information provided to support the affidavit was stale, as it was provided several weeks and months before the issuance of the warrant. [Doc. 18 at 3]. In order to establish probable cause to obtain a search warrant, the affidavit must not include "stale" information, and whether information is stale depends on the "inherent nature of the crime." *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998) (quoting *United States v. Henson,* 848 F.2d 1374, 1382 (6th Cir. 1988)). In determining whether information in a search warrant affidavit was stale, the Sixth Circuit looks to the following factors:

> The character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), [and] the place to be searched (mere criminal forum of convenience or secure operational base?).

*United States v. Brooks*, 594 F.3d 488, 493 (6th Cir. 2010) (internal citations omitted).

In his affidavit, Special Agent Makemson detailed that Lorrie Lankford informed the Lenoir City Police that she was concerned about the Defendant possessing guns and threatening to harm law enforcement, including on June 28, 2018. [Exh. 1 at ¶ 4]. Special Agent Makemson and Detective Stanley then conducted an interview with Ms. Lankford on July 10, 2018, in which Ms. Lankford stated that the Defendant informed her that he was ordering gun parts off of the Internet. [*Id.* at ¶ 5]. As the Court has previously detailed, law enforcement searched 503 Waller

Ferry Road on July 30, 2018, which Special Agent Makemson also described in his affidavit. [*Id.* at ¶ 12]. The affidavit also includes a description of the jail calls on August 7 and 8, 2018 [*Id.* at ¶¶ 15–16], as well as information obtained from an interview with the Defendant's brother, Joseph Duggan on August 8, 2018. [*Id.* at ¶¶ 18–22]. However, the Defendant claims that by August 28, 2018, when the application for a search warrant was signed, this information had subsequently become stale.

Ultimately, the Court finds that the information is not stale, largely due to the fact that firearms are not perishable items. *See United States v. Lancaster,* 145 F. App'x 508, 513 (6th Cir. 2005); *see also United States v. Vanderweele,* 545 F. App'x 465, 469 (6th Cir. 2013) (holding that information from named informant that he witnessed defendant possess a silencer at a motorcycle club seven months prior to the execution of search warrant at defendant's residence was not stale); *United States v. Pritchett,* 40 F. App'x 901, 905–06 (6th Cir. 2002) (holding that information from named informant that he saw firearms at defendant's residence four months prior to the execution of search warrant at defendant's residence was not stale because "[f]irearms are durable goods and might well be expected to remain in a criminal's possession for a long period of time").

Furthermore, the illegal firearm possession alleged in the search warrant affidavit was a continuous and ongoing offense. *See, e.g., United States v. Goodwin,* 552 F. App'x 541, 545 (6th Cir. 2014) ("Possession of a firearm is a continuing offense that ceases only when the felon relinquishes possession."). Lastly, the search warrant covered the Defendant's residence, and the Defendant was incarcerated at the time of the search, which supports a finding that the information contained in the affidavit was not stale. *See id.* at 546 ("The fact that the place to be searched was

Goodwin's home implicates 'a secure operational base,' making the warrant's three-month time span less significant.") (internal citation omitted).

Accordingly, the Court finds the information contained in the search warrant was not stale, and the affidavit in support of the search warrant properly included information from throughout the ongoing investigation.

### 2. Lorrie Lankford and Joseph Duggan

The Defendant contends that the affidavit was based upon information from Lorrie Lankford and Joseph Duggan—two individuals who were either arrested or incarcerated with questionable credibility that wished to cooperate with law enforcement. [Doc. 32 at 20–21]. With respect to Lorrie Lankford, the Defendant contends that Ms. Lankford identified several individuals involved in criminal activity, after being arrested for narcotics possession, without a history of providing accurate information. Similarly, the Defendant claims that Joseph Duggan cooperated with officers after being arrested for a parole violation and specifically requested help from law enforcement with his parole officer. Further, the Defendant asserts that Joseph Duggan had also been living at 1640 Parkway Drive, and as a felon, firearms at this location could expose him to criminal prosecution.

The Sixth Circuit has described whether an affidavit establish probable cause to support a search warrant under *Illinois v. Gates*, 462 U.S. 213, 238 (1983):

> In applying its "totality of the circumstances" test, the *Gates* court identified three factors in determining whether probable cause existed: 1) the basis of the informant's knowledge; 2) the reliability of the informant; and 3) the corroborative evidence presented by the government. *Gates,* 462 U.S. at 230–32, 245 . . . . The *Gates* court noted that these factors are not to be analyzed as "separate and independent requirements to be rigidly exacted in every case." *Gates,* 462 U.S. at 230. Rather, the reviewing court is to weigh them together in determining whether they form a substantial basis for finding probable cause. *Id.* The strength of one or more of these factors may compensate for the deficiencies of another factor. *Id.* at 233–34.

30

*United States v. Shamaeizadeh*, 80 F.3d 1131, 1136 (6th Cir. 1996) (internal footnote omitted).

As the Court has previously discussed, in his affidavit in support of the search warrant, Special Agent Makemson described the information provided by both Lorrie Lankford and Joseph Duggan. Special Agent Makemson detailed that Lorrie Lankford previously informed Lenoir City Police on two occasions that she was concerned about the Defendant possessing guns and threatening to harm law enforcement. [Exh. 1 at ¶ 4]. Special Agent Makemson explained that during her interview on July 10, 2018, Ms. Lankford discussed how the Defendant was ordering gun parts off of the Internet, that she had seen the Defendant with AR-15 type rifles, and that she had seen the Defendant with firearms on several occasions at the trailer off of 503 Waller Ferry Road. [*Id.* at ¶ 5].

In his affidavit, Special Agent Makemson also described his interview with Joseph Duggan on August 8, 2018. [*Id.* at ¶ 18]. Special Agent Makemson stated that Joseph Duggan claimed that a credit card had been opened in his name, that he had seen the Defendant in the possession of rifles on several occasions, and that the Defendant had purchased gun parts online to build complete guns. [*Id.* at ¶ 19-22]. Additionally, Joseph Duggan stated that the Defendant's wife, would hold any guns that the Defendant had. [*Id.* at ¶ 22].

Here, Special Agent Makemson's affidavit in support of the search warrant appropriately included information from both Lorrie Lankford and Joseph Duggan. Lorrie Lankford and Joseph Duggan's provided information was based upon personal knowledge and observation of the Defendant possessing firearms. "Problems with an informant's credibility (for instance, his criminal record, his desire to escape criminal sanction, or possible revenge motives against the subject of the search warrant) may be counteracted if the knowledge of the events being described is detailed or was obtained firsthand." *United States v. Stroud*, No. 2:10-cr-15, 2019 WL 2802489,

at *2 (W.D. Mich. June 30, 2010), *report and recommendation adopted by*, 2010 WL 2802485 (W.D. Mich. July 15, 2010). Further, the affidavit names both Lorrie Lankford and Joseph Duggan, as well as describes their relationship to the Defendant. *See, e.g., United States v. Kinison,* 710 F.3d 678, 683 (6th Cir. 2013) (holding probable cause existed based on informant's "credibility as a named informant along with" the informant's relationship with the defendant); *United States v. Dyer*, 580 F.3d 386, 391 (6th Cir. 2009) (noting that statements of informant "whose identity was known to the police and who would be subject to prosecution for making a false report, are thus entitled to far greater weight than those of an anonymous source") (quoting *United States v. May,* 399 F.3d 817, 824–25 (6th Cir. 2005)); *United States v. Combs,* 369 F.3d 925, 938 (6th Cir. 2004) (noting informant "was known to the police . . . [had] informed them that he had recently traded guns with [defendant] for OxyContin, and his statements corroborated other information the police already had").

Additionally, the affidavit identified that Ms. Lankford was in custody for drug possession during her interview [*Id.* at ¶ 5], and that Joseph Duggan was in custody for a parole violation during his interview [*Id.* at ¶ 18]. The Sixth Circuit has found that "persons with personal motives are often the source of very reliable information." *United States v. Czuprynski,* 46 F.3d 560, 564 (6th Cir. 1995); *see also United States v. Pelham,* 801 F.2d 875, 878 (6th Cir. 1995) ("When a witness has seen evidence in a specific location in the immediate past, and is willing to be named in the affidavit, the 'totality of circumstances' presents a 'substantial basis' for conducting a search for that evidence").

Further, Special Agent Makemson's affidavit provides sufficient corroboration for the information provided by Lorrie Lankford and Joseph Duggan. "[E]ven where law enforcement does not name an informant in the affidavit or receives information from an informant whose

reliability is not established, probable cause may exist 'when there is some independent corroboration by the police of the informant's information.'" *United States v. Gregory*, 311 F. App'x 848, 856 (6th Cir. 2009) (quoting *United States v. Jackson,* 470 F.3d 299, 306 (6th Cir. 2006)); *see also United States v. Frazier,* 423 F.3d 526, 532 (6th Cir. 2005) (noting that, in the absence of *any* indicia of a confidential informant's reliability, the affidavit must contain "substantial independent police corroboration").

Lorrie Lankford stated that she had seen the Defendant possess firearms at 503 Waller Ferry Road on several occasions, and Special Agent Makemson detailed that a search of the trailer on July 30, 2018 located "a Glenfield Model 25 .22 caliber rifle, a .22 caliber starter pistol, what appears to be a homemade silencer, and over 400 rounds of various ammunition." [Exh. 1 at ¶ 12].[2] Special Agent Makemson testified that finding a large-capacity magazine for an AR-15 rifle, as well as a lower receiver for an AR-style rifle corroborated information received from Ms. Lankford regarding the Defendant having an AR-style rifle and attempting to build a rifle with ordered parts. [Tr. 47–48].

Further, in his affidavit, Special Agent Makemson stated that various pieces of mail were found listing the Defendant's address as 1640 Parkway Drive during the search of the trailer on July 30, 2018. [Exh. 1 at ¶ 13]. Additionally, Joseph Duggan's stated that he had seen the Defendant with rifles, that the Defendant had purchased several gun parts online, and that there was a credit card opened in his name. [*Id.* at ¶ 19–22]. Lorrie Lankford also told law enforcement that the Defendant was ordering gun parts over the Internet [*Id.* at ¶ 5], in addition to the homemade silencer that law enforcement found after the search of the trailer on July 30, 2018. Lastly, the

---

[2] Although the Defendant claims that any items seized from the illegal search of the trailer on July 30, 2018 should be excluded as fruit of the poisonous tree [Doc. 32 at 21], the Court has already found that Patricia Duggan possessed the apparent authority to consent to a search of the trailer. *See supra* Section IV(A)(2).

33

Defendant listed the address at 1640 Parkway Drive as his residence after being arrested, as well as on his state issued identification card. [*Id.* at ¶ 23].

The Defendant also challenges the use of jail calls between the Defendant and his wife on August 7 and 8, 2018 as support for a finding of probable cause, claiming that "the words 'firearms,' 'weapons,' and 'ammunition' were never specifically discussed." [Doc. 32 at 21]. However, in his affidavit Special Agent Makemson stated that he interpreted the Defendant's jail calls with his wife on August 7 and 8, 2018, and use of the term the "tin man" to be referencing firearms "based on the fact that firearms are made of metal and should not be outside because of rust." [Exh. 1 at ¶ 17]. Additionally, Special Agent Makemson stated that, based upon his experience, it is common for criminal defendants to talk in code or in vague terms when referring to guns while talking over the telephone in order to avoid implicating themselves, as every jail phone call begins with a pre-recorded statement that the call may be recorded. [*Id.*].

"[A]t the probable cause inquiry stage, the [C]ourt requires only information in the affidavit from which the magistrate judge could conclude 'from the totality of the circumstances, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Owens*, 742 F. App'x 1004, 1008 (6th Cir. 2018) (quoting *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004) (citation and internal quotation marks omitted)). Ultimately, the Court finds that the affidavit in support of the search warrant detailed independent corroboration for the information provided by Lorrie Lankford and Joseph Duggan. A court reviewing an issuing Magistrate Judge's determination, moreover, is to pay "great deference" to the Magistrate Judge's finding of probable cause, and should uphold a warrant so long as the Magistrate Judge had a "substantial basis for . . . concluding that a search would uncover

34

evidence of wrongdoing." *United States v. Leake*, 998 F.2d 1359, 1363 (6th Cir. 1993) (internal quotations and citations omitted). Therefore, the Court finds that Special Agent Makemson's affidavit provided the issuing Magistrate Judge with a substantial basis to find probable cause to believe that firearms and ammunition would be found at 1640 Parkway Drive.

### C. Application of the Exclusionary Rule

"The general remedy for a Fourth Amendment violation is that evidence obtained due to the unconstitutional search or seizure is inadmissible." *United States v. Dice*, 200 F.3d 978, 983 (6th Cir. 2000); *see also Mapp v. Ohio*, 367 U.S. 643, 654 (1961) (holding that "all evidence obtained by an unconstitutional search and seizure [is] inadmissible in federal court"); *Weeks v. United States*, 232 U.S. 383, 398-99 (1914) (establishing the exclusionary rule as the remedy for violations of the Fourth Amendment). However, the exclusion of evidence is "a judicially created rule . . . 'designed to safeguard Fourth Amendment rights generally through its deterrent effect.'" *United States v. Herring*, 555 U.S. 135, 139-40 (2009) (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)). The exclusionary rule applies only where "its remedial objectives are thought most efficaciously served," *Arizona v. Evans*, 514 U.S. 1, 11 (1995), and where it "'results in appreciable deterrence.'" *Herring*, 555 U.S. at 141 (quoting *United States v. Leon*, 468 U.S. 897, 909 (1984)).

In the instant case, the Government argues that even if the Court finds a constitutional violation occurred, the exclusionary rule should not be applied in this case, because law enforcement acted in good faith in conducting the searches of the Defendant's trailer at 503 Waller Ferry Road, as well as while executing the search warrant at 1640 Parkway Drive.

However, the Court has already found that Patricia Duggan possessed the apparent authority to consent a search of the Defendant's trailer at 503 Waller Ferry Road, and that Special

Agent Makemson's affidavit provided probable cause for the search warrant to search 1640 Parkway Drive. Therefore, the Court finds no basis to exclude the evidence seized from any search, and, thus, no reason to delve into whether the policy behind the exclusionary rule applies in this case.

## V. CONCLUSION

After carefully considering the parties' arguments and the relevant legal authorities, the Court finds no basis to suppress the evidence resulting from the searches of the Defendant's trailer at 503 Waller Ferry Road or from the search of the Defendant's residence at 1640 Parkway Drive. For the reasons set forth herein, the Court **RECOMMENDS** that Defendant's Motion to Suppress [**Doc. 18**] be **DENIED**.[3]

Respectfully submitted,

United States Magistrate Judge

---

[3] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582, 587 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

36