UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No.: 3:18-CR-163-TAV-HBG |
| DANIEL GARY DUGGAN, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This criminal action is before the Court on the Report and Recommendation (the "R&R") of Magistrate Judge H. Bruce Guyton, entered on April 17, 2019 [Doc. 33], which addresses the defendant's motion to suppress [Doc. 18]. After considering the parties' oral and written arguments, Magistrate Judge Guyton recommended that defendant's motion be denied. The defendant filed an objection to the R&R [Doc. 37], to which the government responded [Doc. 41].

**I. Background**

The Court presumes familiarity with the R&R in this case, but for purposes of background, includes the following findings of fact as articulated in the R&R:

> Patricia Duggan is the owner of both properties at issue in this case—503 Waller Ferry Road and 1640 Parkway Drive in Lenoir City, Tennessee. The Defendant was arrested by the Loudon County Sheriff's Office on July 28, 2018, for domestic assault.
> Patricia Duggan signed a Consent to Search Form on July 30, 2018, at 8:25 p.m., authorizing law enforcement to conduct a complete search of the premises and property, including all buildings and vehicles, located at "503 Waller Ferry [Road], Lenoir City, TN, House and White Trailer Next Door." [Exh. 3]. Law enforcement officers, including Special Agent

Makemson and Detective Stanley, subsequently conducted a search of the property at 503 Waller Ferry Road, including the house and trailer. After the search on July 30, 2018, Patricia Duggan signed a consent to the forfeiture of several items seized from the trailer at 503 Waller Ferry Road, including: 1) a black homemade silencer with no serial number; 2) approximately 42 rounds of miscellaneous ammunition; 3) a Glenfield Model 25 .22 caliber rifle; 4) approximately 277 rounds of miscellaneous ammunition; 5) approximately 89 rounds of miscellaneous ammunition; 6) a Model 1900 .22 caliber Brevettata starter pistol; 7) one loaded magazine from Room A; and 8) six loaded magazines from Room B. [Exh. 6].

On August 28, 2018, Special Agent Makemson filed an application for a search warrant to search the residence located at 1640 Parkway Drive, Lenoir City, Tennessee, 37771. [Exh. 1]. In support of this application, Special Agent Makemson filed a supporting affidavit as well as pictures of the property. Magistrate Judge Debra C. Poplin signed the search warrant on August 28, 2018, finding that probable cause existed to search the property at 1640 Parkway Drive. [Id.].

Law enforcement officers then searched the property at 1640 Parkway Drive on August 30, 2018. Several items were seized following the search, including: 1) one round of .22 caliber ammunition; 2) one round of .25 caliber/loaded Ruger magazine with six "rounds .380/1 round .22 blank;" 3) 38 rounds of assorted .22 caliber ammunition; 4) 26 rounds of .223 caliber ammunition; 5) five rounds of .45 caliber ammunition; 6) one round of 12 gauge ammunition; 7) one round of .357 caliber ammunition; 8) 215 rounds of assorted caliber ammunition; and 9) a suspected machine gun- Glock selector switch. [Exh. 1].

On August 30, 2018, after the execution of the search warrant and while the Defendant was still in jail, Special Agent Makemson and law enforcement officers then obtained Ms. Duggan's consent to search the property on 503 Waller Ferry Road for a second time. [Exh. 8]. Following this search, approximately seventeen rounds of additional ammunition were found.

## II. Standard of Review

A court must conduct a *de novo* review of those portions of a magistrate judge's report and recommendation to which a party objects unless the objections are frivolous, conclusive, or general. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *Mira v. Marshall*, 806

F.2d 636, 637 (6th Cir. 1986). "Objections disputing the correctness of the magistrate's recommendation, but failing to specify the findings believed to be in error are too general and therefore insufficient." *Stamtec, Inc. v. Anson*, 296 F. App'x 516, 519 (6th Cir. 2008) (citing *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006)). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations" made by the magistrate judge. 28 U.S.C. § 636(b)(1).

## III. Analysis

The defendant objects to Magistrate Judge Guyton's determinations that: (1) Patricia Duggan had lawful authority to consent to the search of defendant's trailer on July 30, 2018; and (2) the officers had probable cause for the warrant to search the residence located at 1640 Parkway Drive on August 30, 2018. The Court will address each objection in turn.

### A. Validity of Consent to the July 30, 2018 Trailer Search

Neither party disputes the R&R's conclusions that defendant had an expectation of privacy in the trailer at 503 Waller Ferry Road or that Patricia Duggan lacked actual authority to consent to its search. Because these issues are not contested, the Court adopts the Magistrate Judge's recommendations. *See* 28 U.S.C. § 636(b)(1). Defendant, however, does contest the Magistrate Judge's conclusion that Patricia Duggan had apparent authority to consent to the trailer's search [Doc. 37]. In response, the government argues that the R&R correctly decided this issue, or alternatively, that the good faith exception applies [Doc. 41].

3

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. Warrantless searches are presumptively unreasonable, *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993), however an exception exists where valid consent is obtained. *United States v. Lucas*, 640 F.3d 168, 174 (6th Cir. 2011). The government bears the burden of demonstrating by a preponderance of the evidence and through clear and positive testimony that valid consent to a search was given. *United States v. Jinojosa*, 606 F.3d 875, 881 (6th Cir. 2010).

Valid consent can come from persons who possess actual or apparent authority to give such consent. *United States v. Aghedo*, 159 F.3d 308, 310 (7th Cir. 1998) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973)). Actual authority includes persons who maintain common authority over the premises to be searched. *United States v. Matlock*, 415 U.S. 164, 171 (2007). The Supreme Court has explained that "Common authority is, of course, not to be implied from the mere property interest a third party has in the property. . . . but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *Id*. at 171 n.7; *see also United States v. Chaidez*, 919 F.2d 1193, 1201 (7th Cir. 1990) ("Use of and access to the property are the touchstones of authority.").

4

Valid consent can also be obtained from a person possessing apparent authority to give consent, relevant where "an individual represents to government officials that he or she has actual common authority, but in reality does not have such authority." *United States v. Turner*, 287 F. App'x 426, 430 n.3 (6th Cir. 2008). In these instances, courts will consider the consent valid "if the facts available to the officer at the moment . . . warrant a man of reasonable caution in the belief that the consenting party had authority over the premises." *Id.* (citing *Illinois v. Rodriguez*, 497 U.S. 177, 188 (1990)) (internal quotations omitted). This is an objective standard, with consent valid only if an officer reasonably concludes from the facts available that the third party had authority to consent to a search. *United States v. Gillis*, 358 F.3d 386, 390–91 (6th Cir. 2004).

The R&R opines that Patricia Duggan had apparent authority to consent to the search of defendant's trailer, and that Detective Stanley and Special Agent Makemson were reasonable to reach this conclusion [Doc. 33]. The R&R highlights several facts in support. First, Patricia Duggan gave both written and oral consent to the search of her property. Second, Detective Stanley and Special Agent Makemson reviewed property records to determine that Patricia Duggan owned the land on which the trailer sat. Third, Patricia Duggan told law enforcement that the entire property was used for storage, and that defendant placed the trailer there without her permission. Finally, Detective Stanley testified that, while obtaining Patricia Duggan's written consent, he clarified twice that both the house and the trailer on the property were listed on the consent form, and Patricia Duggan did not object or alert him that she lacked control of the trailer, or provide any

5

additional information which would indicate that she did not have authority to consent to the search. The R&R concludes that, given these facts, and Patricia Duggan's relationship as mother to the defendant, it was reasonable for Detective Stanley and Special Agent Makemson to believe that she had authority to consent to a search of the trailer [Doc. 33].

After reviewing relevant caselaw and the facts at hand, and while recognizing the valid points set forth in support of the R&R in support of a finding of apparent authority, the Court determines that these circumstances were not sufficient to establish apparent authority, and that Detective Stanley and Special Agent Makemson were not reasonable in reaching their conclusion without further inquiry. First, regarding Patricia Duggan's oral and written consent to search the property and the trailer located therein, the Supreme Court has stated that law enforcement cannot automatically rely on a person's invitation to search a premise. *Rodriguez*, 497 U.S. at 188 ("[W]hat we hold today does not suggest that law enforcement officers may always accept a person's invitation to enter premises.") Instead, even if a person is asserting authority over a premise, law enforcement must look at the surrounding circumstances to determine whether they can reasonably act on the invitation without further inquiry. *Id.*; *United States v. Purcell*, 526 F.3d 953, 963 (6th Cir. 2008) ("[A]pparent authority cannot exist if there is ambiguity as to the asserted authority and the searching officers do not take steps to resolve the ambiguity."). Thus, Patricia Duggan's oral and written consent, in the face of evidence indicating she may not have authority or control over the premise at issue (here the trailer) would not be enough to demonstrate apparent authority. And, as discussed below, such evidence existed.

To establish Patricia Duggan's joint use and control of the trailer, the R&R highlights that Patricia Duggan owned the property at 503 Waller Ferry Road, and that Detective Stanley and Special Agent Makemson were aware of this at the time Detective Stanley sought her permission for the search warrant [Doc. 33]. However, the record also makes clear that Detective Stanley was aware that the trailer belonged to defendant, not Patricia Duggan, and that defendant moved it onto her property without her permission [Doc. 37-1]. When Detective Stanley first sought to obtain Patricia Duggan's consent to search the trailer and property, Patricia Duggan stated, "503—the trailer's—I mean the house, is 503 Waller Ferry. Dan just more or less moved the trailer in on me, I didn't tell him he could. He just does what he wants to most the time. But he's I guess the same address" [Doc. 37-1]. This exchange indicates that defendant unilaterally put the trailer on Patricia Duggan's property, and provides no further information intimating that she used or had control over it. Rather, she states "he's I guess the same address," thereby differentiating his trailer from her house [37-1]. Thus, although this information confirms that Patricia Duggan has an interest in the property on which the trailer sits, it does not demonstrate mutual use, joint access, or control of the trailer. *See Matlock*, 415 U.S. at 171 n.7.

The R&R also notes that prior to giving her consent to search the trailer, Patricia Duggan told law enforcement that the entire property was used for storage. Further, upon visiting the property, law enforcement stated that the trailer's appearance gave no indication that it was used as a residence, as the grass was overgrown, the trailer was not

locked, and its windows were taped [Doc. 33]. Law enforcement also noted that the trailer's doors were shut and there was a no trespass sign posted beside its door. Even viewing the trailer as a closed container, as opposed to a residence, the Court notes that defendant still retained an expectation of privacy in its contents. *United States v. Davis*, 332 F.3d 1163, 1167 (9th Cir. 2003) (citing *United States v. Fultz*, 146 F.3d 1102, 1105 (9th Cir. 1998)) ("A person has an expectation of privacy in his or her private, closed containers and does not forfeit that expectation of privacy merely because the container is located in a place that is not controlled exclusively by the container's owner."); *see also United States v. Gooch*, 6 F.3d 673, 766 (9th Cir. 1993) (citing *United States v. Ross*, 456 U.S. 798, 811 (1982)) (defendant retained an expectation of privacy in his tent, which the court characterized as a large, movable, closed container). Additionally, a third party still needed to exercise common authority to give valid consent to its search. *See United States v. Waller*, 426 F.3d 838, 845 (6th Cir. 2005) ("A valid consent to search the closed container must come from one who has common authority over the effects sought to be inspected, one who has mutual use of the property, and one who generally has joint access or control for most purposes.").

Law enforcement's understanding that the property was used for storage, and their conclusion that the trailer did not appear inhabited, does not, in light of the other known facts, provide a reasonable law enforcement officer with sufficient evidence to conclude that *Patricia Duggan* used the trailer for storage, or otherwise exercised control over it. The Ninth Circuit, in *United States v. Fultz*, 146 F.3d 1102 (9th Cir. 1998), evaluated

apparent authority where a defendant kept items in a closed cardboard box that he stored in a third party's garage. The court stated, "what matters is not whether [the third party] had access to the *garage*, but whether she had mutual use and joint access to or control over the *boxes*." *Id.* at 1106. As evidenced by the record, when Detective Stanley sought Patricia Duggan's consent to search the trailer, she told Detective Stanley that the trailer belonged to her son and that he placed it on her property without her permission [Doc. 37-1]. Moreover, during that same interaction with Detective Stanley, she admitted that she did not know whether the trailer was connected to utilities, but in contrast exhibited knowledge about the house, stating, "now, the trailer did have power to it, but I don't know if it's been cut off or not . . . but now, I know the house hadn't got any power" [Doc. 37-1]. This interaction indicates that Patricia Duggan had limited, if any, interaction with the trailer and its upkeep, in contrast to the house, which she demonstrates knowledge about and authority over.

Evaluating these circumstances in total, the Court notes that at the time Patricia Duggan gave her consent to the search of the trailer, law enforcement was aware that it was on her land but that she did not own it, give permission for it to be there, and was unable to provide information on its upkeep. In contrast, law enforcement knew that the trailer belonged to defendant, he used it for storage, he had placed it on Patricia Duggan's property without her permission, and he appeared to have hooked it up to power at some point. Under these circumstances the Court concludes it would not be reasonable for law enforcement to assume Patricia Duggan exercised common authority or control over the

9

trailer in light of these ambiguous facts without making further inquiry. *See Purcell*, 526 F.3d at 964-65.[1]

The R&R acknowledges that Patricia Duggan lacked access and control over the trailer. It states, "Patricia Duggan and the Defendant 'held a mutual understanding' that the trailer contained the Defendant's personal property, and Patricia Duggan did not attempt to access or control the trailer," and "although Patricia Duggan had a 'mutual use' of the overall property, she did not access or have control over the trailer at issue" [Doc. 26]. Nevertheless, the R&R finds that defendant "potentially assumed the risk" that his mother would consent to a search of the trailer, as it was on her property without her permission [Doc. 33]. However, *Matlock* specifies that "a mere property interest" is not enough to justify third-party consent, and assumption of the risk inquiries are relevant to

---

[1] It is worth comparing the facts in *Purcell* to those of this case. In *Purcell*, the Sixth Circuit affirmed the district court's partial grant of the defendant's motion to suppress where officers had relied on the consent of the defendant's girlfriend to search bags in their shared hotel room. 526 F.3d at 963–65. Specifically, she told officers that there was a firearm in one of the bags, although she wasn't sure which one, and then claimed one of the bags as her own. *Id.* at 958. Officers discovered only men's clothing when searching that bag, but then proceeded to search the other bags without further inquiry, ultimately finding the firearm. *Id.* The court held that the ambiguity created when the officers found only men's clothing in the bag triggered the officers' duty to inquire further to establish the girlfriend's authority to consent to the search of the other bags. *Id.* at 964.

In dissent, Judge Sutton would have found apparent authority based, in part, on the girlfriend's knowledge of the general contents of the bags and the defendant's status as a fugitive from prison—both of which, he said, contributed to the reasonableness of the officers' judgment that the girlfriend had authority to consent. *Id.* at 966. In Patricia Duggan's case, however, there was little to no comparable evidence of mutual use or control, making her authority to consent even more ambiguous than in *Purcell*. Here, law enforcement knew that the trailer belonged to defendant, not his mother, that she had very little knowledge of the trailer, its contents, and its upkeep, that she didn't have a key to it, and that she had only been inside it a few times. In the face of this ambiguity, the officers' failure to inquire further before making a warrantless entry was unlawful.

"common areas" used by persons having joint access and control for most purposes. *See Matlock*, 415 U.S. at 171 n.7. The facts, as recognized by the R&R, make clear that this was not the case.

Finally, the R&R states that all of the above factors, combined with Patricia Duggan's maternal relationship to the defendant, led law enforcement to believe that she had the authority to consent to a search of her entire property, including the trailer [Doc. 33]. As previously discussed, the facts known to the law enforcement agents at the time created at least an ambiguous situation that necessitated follow-up questions. Moreover, Ms. Duggan's maternal relationship to the defendant does not tilt the scales in favor of a presumption of joint use and control. *See Purcell*, 526 F.3d at 964 ("Being in an intimate relationship, however, does not endow a would-be-consenter with any additional sheen of apparent authority that would survive the discovery of evidence that contradicts the consenter's asserted authority.").

The R&R also notes that Patricia Duggan "did not object or alert law enforcement when Detective Stanley specifically mentioned that her consent would cover the trailer located on her property" and she "did not tell law enforcement that she did not have control over or had ever been denied access to the trailer" [Doc. 33]. However, it is *law enforcement's* responsibility to address ambiguity as to third-party consent, and given the conflicting evidence it was incumbent on law enforcement to determine whether defendant's mother had common authority over the trailer, by asking questions related to her mutual use, joint access, or control. *See Rodriguez*, 497 U.S. at 182 ("Common

authority rests on mutual use of the property by persons generally having joint access or control for most purposes. The burden of establishing that common authority rests upon the State.") (internal quotations and citations omitted); *Purcell*, 526 F.3d at 963 ("The government cannot establish that its agents reasonably relied upon a third party's apparent authority if agents, faced with an ambiguous situation, nevertheless proceed without making further inquiry. If the agents do not learn enough, if the circumstances make it unclear whether the property about to be searched is subject to mutual use by the person giving consent, then warrantless entry is unlawful without further inquiry.") (quoting *Waller*, 426 F.3d at 846). Patricia Duggan later testified that she has no ownership interest in the trailer, has never paid for it, stored any property in it, hooked utilities up to it, had a key to it, and had only been inside three or four times [Doc. 25].[2] The onus was not on her, but on law enforcement, to ask appropriate questions to resolve this ambiguous situation.

---

[2] Defendant cites *United States v. Groves*, 530 F.3d 506, 509–10 (7th Cir. 2008), to demonstrate that courts have considered multiple factors when evaluating a third party's authority to give consent to a search, including:

> (1) Possession of a key to the premise; (2) a person's admission that she lives at the residence in question; (3) possession of a driver's license listing the residence as the driver's legal address; (4) receiving mail and bills at that residence; (5) keeping clothing at the residence; (6) having one's children reside at that address; (8) performing household chores at the home; (9) being on the lease for the premises and/or paying rent; and (1) being allowed into the home when the owner is not present.

The Court recognizes that the factors in *Groves* concern a residence, not a closed container, however the Court nevertheless finds them helpful to evaluate the situation at hand. As stated, questioning of Patricia Duggan revealed that did not own the trailer, have a key to it, keep items in it, or participate in its upkeep. The record does not indicate that, at the time of consent, law enforcement had verified that Patricia Duggan had even been inside the trailer. And caselaw makes clear that it was not her burden to affirmatively clarify the contour of her control. *See Purcell*, 526 F.3d at 963.

That she did not unilaterally volunteer this information does not relieve law enforcement of their responsibility to ask.

Furthermore, the evidence law enforcement obtained from defendant's trailer should be excluded under the exclusionary rule. The rule, when applicable, "forbids the use of improperly obtained evidence at trial" and is "designed to safeguard Fourth Amendment rights generally through its deterrent effect." *United States v. Herring*, 555 U.S. 135, 139–40 (2009) (internal citation omitted). "The fact that a Fourth Amendment violation occurred—i.e., that a search or arrest was unreasonable—does not necessarily mean that the exclusionary rule applies." *Id.* at 140 (citing *Illinois v. Gates*, 462 U.S. 213, 233 (1983)). Instead, the rule should be used where it results in "appreciable deterrence," *id.* (citing *United States v. Leon*, 468 U.S. 897, 909 (1984)), which serves to counterweigh its "substantial social costs." *Id.* at 141 (citing *Illinois v. Krull*, 480 U.S. 340, 352–353 (1987)).

Because the exclusionary rule's primary purpose is to deter law enforcement from violating the Fourth Amendment in the future, it does not apply in all circumstances. Instead, it applies only when "police conduct [is] sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring*, 555 U.S. at 144. "The pertinent analysis of deterrence and culpability is objective, not an inquiry into the subjective awareness of arresting officers. . . . [The] good-faith inquiry is confined to the objectively ascertainable question
13

whether a reasonably well-trained officer would have known that the search was illegal in light of all of the circumstances." *Id.* at 145 (internal citations and quotations omitted).

Oftentimes courts have chosen not to apply the exclusionary rule where law enforcement relies on authority that is subsequently invalidated, be it a search warrant, *see Leon*, 468 U.S. at 922, or a statute that is later deemed unconstitutional. *See Krull*, 480 U.S. at 349–350. In those instances, the officers relied in good faith on what they understood to be an external validation of their authority to execute a search or seizure, whether through a magistrate's approval or a statute's words. No such external or good-faith reliance occurred here. Instead, law enforcement did not attempt to obtain a warrant, but instead sought third-party consent to search defendant's trailer. The parties do not object to the R&R's conclusion that Patricia Duggan did not have actual authority to consent to the search of defendant's trailer, and, as discussed above, law enforcement had a duty to take steps to resolve the ambiguity concerning Patricia Duggan's common authority over the trailer. A reasonably well-trained officer in this situation should have understood that Patricia Duggan could not consent to the trailer's search based on the conflicting information known at the time.

Excluding this evidence would serve to deter future law enforcement violations of the Fourth Amendment. To rule otherwise would, in this instance, hollow Fourth Amendment protections as they relate to third-party consent. In effect, it would signal to police that if an officer is confronted with ambiguous circumstances concerning the ability of a third party to give consent to search another's closed container, no further questions

need be asked. Caselaw makes clear that this is not so. *See Rodriguez*, 497 U.S. at 182; *Purcell*, 526 F.3d at 963. In sum, because a reasonably well-trained officer would have known that there was not a sufficient basis for authority to search, and because applying the exclusionary rule in this instance would further the aims of the Fourth Amendment, the Court finds that the exclusionary rule is appropriate under the facts of this case. The evidence obtained from defendant's trailer will be suppressed.

For the same reasons stated above, the second search of defendant's trailer, also done pursuant to the consent of Patricia Duggan, violated defendant's Fourth Amendment rights, and evidence taken from that search will likewise be suppressed under the exclusionary rule.

### B. Probable Cause for Warrant to Search 1640 Parkway Drive

Defendant contends that the search warrant affidavit for 1640 Parkway Drive fails to establish probable cause. The Court disagrees and finds that, even excluding the suppressed evidence, probable cause for the warrant existed.[3] Magistrate Judge Poplin issued a search warrant for 1640 Parkway Drive based on the affidavit of Special Agent Makemson. The affidavit included information provided by two jailhouse informants, information about the firearms discovered from the search of defendant's trailer at 503

---

[3] The suppressed items are listed in paragraphs 12-14 of Agent Makemson's affidavit, and include a Glenfield Model 25 .22 caliber rifle, a .22 caliber starter pistol, what appears to be a homemade silencer, over 400 rounds of ammunition, and "numerous pieces of indicia" indicating defendant stayed at the trailer, including mail addressed to 1640 Parkway Drive [Doc. 24, Exh. 1]. However, and as addressed below, the affidavit contains independent sources of information establishing defendant's residence at 1640 Parkway Drive, therefore suppression of this evidence does not prohibit the Court from finding probable cause based in part on defendant's known address. *See Murray v. United States*, 487 U.S. 533, 538 (1988).

15

Waller Ferry Road, information about the defendant's place of residence, and Special Agent Makemson's interpretation of two jail calls defendant made to his wife on August 7 and 8, 2018. The exclusionary rule applies to the firearms included in the affidavit and any other evidence obtained in the trailer; therefore, the Court must evaluate whether there was probable cause for the search warrant based only on the information supplied by the two informants, known information about defendant's residence, and the conclusions law enforcement drew from the intercepted jail calls between defendant and his wife.

Search warrants may be issued "only upon a finding of probable cause." *United States v. Beals*, 698 F.3d 248, 264 (6th Cir. 2012) (citing U.S. CONST. amend. IV). Probable cause exists where "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. Magistrate judges, when determining if probable cause exists, must make a "practical, common-sense decision" based on the circumstances described in the affidavit. *Id.* Whether an affidavit establishes probable cause to support a search warrant depends on the "totality of the circumstances" test, which requires a judge to analyze "1) the basis of the informant's knowledge; 2) the reliability of the informant; and 3) the corroborative evidence presented by the government." *United States v. Shamaeizadeh*, 80 F.3d 1131, 1136 (6th Cir. 1996) (citing *Gates*, 462 U.S. at 230–32). These factors are not to be viewed independently, but rather in total and together to determine if they provide a substantial basis for probable cause. *Id.* The two principal ways of establishing the reliability of an informant's tip is by evaluating the informant's prior track record, *United States v. Smith*, 182 F.3d 473, 483

(6th Cir. 1999), or by obtaining corroborating information. *United States v. Tuttle*, 200 F.3d 892, 894 (6th Cir. 2000).

The first informant relied on in the affidavit was Lorrie Lankford. Special Agent Makemson testified that Ms. Lankford had previously and on two separate occasions contacted the Lenoir City Police to report that she was concerned that defendant possessed guns and was threatening to harm law enforcement [Doc. 25]. Then, on July 10, 2018, Ms. Lankford was arrested for possession of methamphetamines and interviewed by Detective Stanley and Special Agent Makemson. During this interview she gave the names of several individuals involved in possible criminal activities, including defendant, and stated that defendant was ordering gun parts off of the internet and that she had seen him with firearms on several occasions at the trailer off of 503 Waller Ferry Road [Doc. 24, Exh. 1].

The second informant included in the affidavit was Joseph Duggan, brother of the defendant [Doc. 24, Exh. 1]. Mr. Duggan's interview occurred while he was incarcerated in Blount County Jail for a parole violation. Mr. Duggan claimed that defendant opened a credit card in his name, used the card to purchase ammunition online, and had it shipped to 1640 Parkway Drive, Lenoir City, Tennessee. Mr. Duggan also claimed to have seen defendant in possession of rifles on several occasions, and that defendant's wife would be in possession of any guns that defendant had [Doc. 24, Exh. 1]. Special Agent Makemson noted in his testimony that several times during the interview Mr. Duggan asked Special Agent Makemson to call his probation officer to let the officer know that he was cooperating in this case [Doc. 25].

The affidavit further states that defendant resides at 1640 Parkway Drive, and that this was known to the officers because defendant always listed this residence as his address when he was booked at Loudon County Jail, which had occurred on several occasions, and that this address was also listed on his Tennessee state-issued identification card [Doc. 24, Exh. 1].

Although both Ms. Lankford and Mr. Duggan gave information to law enforcement while in custody, "[p]roblems with an informant's credibility (for instance, his criminal record, his desire to escape criminal sanction, or possible revenge motives against the subject of the search warrant) may be counteracted if the knowledge of the events being described is detailed or was obtained firsthand." *United States v. Stroud*, No. 2:10-cr-15, 2019 WL 2802489, at *2 (W.D. Mich. June 30, 2010), *report and recommendation adopted by*, 2010 WL 2802485 (W.D. Mich. July 15, 2010). In this case, they were. The R&R notes that both Ms. Lankford and Mr. Duggan's information was based on personal knowledge and observation [Doc. 33]. Moreover, the affidavit names them both, describes their relationship to the defendant, and notes that their statements were made to police officers [Doc. 24, Exh. 1]. *See United States v. Dyer*, 580 F.3d 386, 391 (6th Cr. 2009) ("The statements of an informant whose identity was known to the police and who would be subject to prosecution for making a false report, are thus entitled to far greater weight than those of an anonymous source.") (internal quotation and citation omitted). Both of these factors weigh in favor of the reliability of Ms. Lankford and Mr. Duggan's information.

Mr. Duggan's information ties defendant's activities to 1640 Parkway Drive, and this evidence is corroborated by Ms. Lankford and known information by law enforcement. The Sixth Circuit has often emphasized "the importance of the necessary nexus between the place to be searched and the evidence sought." *Dyer*, 580 F.3d at 391 (quoting *United States v. Higgins*, 557 F.3d 381, 390 (6th Cir. 2009)). Here, Mr. Duggan provided information that defendant was purchasing ammunition online and sending it to 1640 Parkway Drive. Ms. Lankford also informed law enforcement that, based on her personal knowledge and friendship with the defendant, she believed defendant was ordering gun parts online. Additionally, based on defendant's booking information and his state-issued identification card, law enforcement knew that his place of residence was 1640 Parkway Drive. Ms. Lankford's information and outside information known to law enforcement thus corroborated Mr. Duggan's statements that defendant was buying ammunition online and sending it to his place of residence.

Applying the *Gates* factors, the Court notes that both informants gave information based on personal knowledge and while in police custody. Further, their tips, along with external information known to law enforcement, corroborated each other and provided a nexus between defendant's activities and the location searched.

Courts must give "great deference" to a Magistrate Judge's finding of probable cause, *United States v. Leake*, 998 F.2d 1359, 1363 (6th Cir. 1993), and the admissible evidence in the affidavit established a "fair probability" that evidence of a crime would be found at 1640 Parkway Drive. *United States v. Williams*, 544 F.3d 683, 686 (6th Cir. 2008)

19

(internal citation omitted). The affidavit was therefore sufficient for the Magistrate Judge to find probable cause. Defendant's motion to suppress the evidence found during this search will be denied.

**IV.   Conclusion**

For the reasons discussed herein, and upon careful and *de novo* review of the record and the law, the Court hereby **SUSTAINS in part** and **OVERRULES in part** defendant's objections to the R&R [Doc. 37]. The Court **REJECTS in part** the R&R's conclusions to the extent that the evidence obtained in the defendant's trailer will be suppressed, and **ACCEPTS** the R&R in all other respects [Doc. 33]. The Court hereby **GRANTS in part** and **DENIES in part** defendant's motion to suppress [Doc. 18].

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE
